United States District Court
Southern District of Texas
**ENTERED**
March 06, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICHARD LEE NUNLEY, § *Plaintiff*, § § v. § § KILOLO KIJAKAZI, § COMMISSIONER OF THE § SOCIAL SECURITY ADMINISTRATION, § *Defendant*. § | Civil Action No.: 4:22-cv-0625 |

## **MEMORANDUM AND ORDER**

Richard Lee Nunley filed the present action under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for disability insurance benefits. Nunley and the Commissioner filed cross-motions for summary judgment. Having considered the parties' filings, the record, and the law, Nunley's Motion (ECF 15) is GRANTED, the Commissioner's Motion (ECF 18) is DENIED and this case is REMANDED to the Commissioner for further proceedings.[1]

### **I. Background**

Nunley filed a Title II application for disability insurance benefits on February 3, 2020 alleging disability beginning January 4, 2020. Tr. 10. Following the denial of his application and subsequent request for reconsideration, Nunley requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. Nunley was represented by counsel at a telephonic hearing on June 7, 2021, at which Nunley and a vocational expert, Hannah Roberts, testified. *Id.*

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including entry of final judgment. ECF 14.

A.	Evidence Introduced at the Hearing

*Claimant's Testimony.*  Nunley, who was 64 years old at the time of the hearing, testified that as a project manager for an air conditioning installation company he was routinely on jobs sites supervising work, having meetings, making decisions, and walking around the site to make sure materials arrived and projects were manned correctly.  Tr. 36-37.  His prior work usually did not require him to lift very much but he would lend a hand as needed.  *Id.* at 37.  Nunley testified he no longer has the physical or mental condition to walk the job sites or "make meetings" like he used to.  *Id.* at 39.  He is not taking any medication for anxiety or depression because he doesn't "like medication unless I just have to have it."  *Id.*  Nunley testified that the mechanical valve in his heart makes a clicking noise that interferes with concentration.  *Id.* at 40.  He has had multiple hernia operations and at the time of the hearing had two hernias but doctors told him they would not perform additional surgery because the hernias will recur.  *Id.*

Nunley watches how much he eats and wears a weightlifting belt to avoid pain.  *Id.* at 40-41.  He testified he could not lift "much more than a glass of water," suffered from "a stinging feeling" in his arms and feet, and got dizzy, and therefore was unable to stand more than 5-10 minutes and needed to use a cane "off and on."  *Id.* at 41-42.  He uses an inhaler and nebulizer frequently.  *Id.* at 42.  Nunley concluded his testimony by stating that his breathing and ability to concentrate have gotten worse in the last six months and most days it is difficult to even get out of bed and get dressed.  *Id.* at 43-45.

*Vocational expert testimony.*  The vocational expert testified that Nunley's past work was described in the DOT as a "construction superintendent" and was performed at the light level.  *Id.* at 46.  She further testified that Nunley was an individual approaching retirement age and had no transferrable skills to sedentary work.  *Id.*

2

*Medical Records.* The medical records before the ALJ span the years 2019–2021 and include: office treatment records from Memorial Hermann Medical Group Cardiology (Tr. 289-93, 350-60); progress notes from Dr. David Albers (Tr. 294-303); a physical RFC assessment from Dr. Adrian Santamaria (Tr. 304-06); a physical RFC assessment from Albers (Tr. 307-09); a physical RFC assessment from Dr. Hajin Lim (Tr. 310-12); progress notes from Northwest Houston Neurology (Tr. 313-31, 342-49); a Consultative Examiner report from Dr. Farzana Sahi (Tr. 332-41); and records from Houston Methodist Primary Care Group (Tr. 361-438). The record also contains function reports prepared by the claimant (Tr. 218-25, 234-42, 245-52) and disability reports prepared by state agency reviewers. Tr. 207-17, 226-33, 243-44.

### B. The ALJ's Decision

On June 17, 2021, the ALJ issued a decision finding that Nunley was not disabled within the meaning of the Social Security Act from January 4, 2020 through the date of the decision. Tr. 10-19. The ALJ recited the standard five-step sequential analysis[2] and found Nunley was insured through June 30, 2023 and had not engaged in substantial gainful activity from his alleged onset date of January 4, 2020 through the date of the decision. Tr. 12. The ALJ found that Nunley had the severe impairments of "aneurysm of the aorta, chronic obstructive pulmonary disease (COPD), hypertension, hernia and chronic inflammatory demyelinating polyneuropathy (CIDP)." Tr. 13. The ALJ further found that none of Nunley's impairments met or equaled a Listing in Appendix 1 and he retained the RFC to perform the full range of light work as defined in 20 C.F.R. 404.1567(b). Tr. 14-18. Finally, the ALJ found that Nunley could perform his past relevant work as a construction superintendent, and thus has not been disabled at any time from January 4, 2020 through June 17, 2021, the date of the decision. Tr. 18-19.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

3

Nunley sought review of the ALJ's decision that he is not disabled with the Appeals Council. Upon denial of review, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

## II.     Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A decision is supported by substantial evidence if "credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted)). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* (citations omitted). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). "The claimant bears the burden of satisfying the first four steps of the analysis; the Commissioner bears the burden of establishing the fifth by

4

demonstrating that other work the claimant can perform is available in the national economy." *Wilson v. Kijakazi*, No. 21-60663, 2022 WL 2339471, at *2 (5th Cir. June 29, 2022). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

### III. Analysis

The ALJ performed the standard five-step sequential analysis. The ALJ concluded the analysis at step 4 because he found Nunley could perform his past relevant work and thus was not disabled within the meaning of the Social Security Act at any time from his alleged onset date of January 4, 2020 through the date of the June 17, 2021 decision. The Court reviews each step of the ALJ's analysis below.

#### 1. Step One

At the first step, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. No party challenges or alleges error in the ALJ's finding that Plaintiff had not engaged in substantial gainful activity since January 4, 2020. Tr. 12; *See* ECF 16; ECF 18.

#### 2. Step Two

At the second step, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Social Security regulations provide that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). The Fifth Circuit recently clarified that "[t]hough the precise wording differs," Social Security Ruling 85-28 comports with its holding in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). *Keel v. Saul*,

986 F.3d 551, 556 (5th Cir. 2021). Thus, an ALJ does not commit legal error by citing SSR 85-28 instead of *Stone* and remand is not required unless "there is no indication the ALJ applied the correct standard." *Id.* Further, if an ALJ proceeds past step two, any failure to apply the *Stone* standard is harmless if it is inconceivable that the result would have been different absent the failure. *Id.*

In this case, the ALJ cited and applied the severity standard articulated in SSR 85-28. Tr. 11, 13. The ALJ found that Plaintiff had the following severe impairments: "aneurysm of the aorta, chronic obstructive pulmonary disease (COPD), hypertension, hernia and chronic inflammatory demyelinating polyneuropathy (CIDP)." *Id.* at 13. Because he found severe impairments, the ALJ continued past step 2 in his analysis. No party challenges or alleges error in the ALJ's severity findings.

### 3. Step Three

The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. p, app. 1. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). For a claimant to show than an impairment "medically equals" a listed impairment the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

The ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled the severity of one of the listed impairments in Appendix 1. Tr. 14. The ALJ specifically

6

evaluated the requirements of Listing 3.02(B) (COPD) and 3.02(B) (chronic restrictive ventilatory disease). *Id.* No party challenges or alleges error in the ALJ's findings that none of Nunley's impairments meet or medically equal a listing.

### 4. Step Four

At step four, the ALJ determines whether the claimant's Residual Functional Capacity (RFC) permits performance of claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). Nunley alleges error in the ALJ's step 4 findings.

#### A. Residual Function Capacity

The ALJ found Nunley has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), which provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

Nunley alleges that the ALJ made a legal error when determining his RFC (1) because he did not properly consider all medical source opinions; (2) because he did not take into account the evidence that Nunley uses a cane; and (3) because Nunley was prejudiced by the ALJ's error. As discussed below, the Court agrees.

#### 1. The ALJ committed legal error in his evaluation of medical source opinions.

Because Nunley filed his application in 2020, the ALJ was not required to afford special evidentiary weight to the opinions of treating physicians. *Hardine v. Kijakazi*, No. 21-60226, 2022

7

WL 2070399, at *3 (5th Cir. June 8, 2022) (citing 20 C.F.R. § 404.1520c(a)).  Instead, the ALJ was required to evaluate the persuasiveness of medical opinions from all medical sources by considering five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) other factors that tend to support or contradict the opinion.  *Ramirez v. Kijakazi*, No. 4:21-CV-03780, 2023 WL 1456786, at *2 (S.D. Tex. Feb. 1, 2023), report and recommendation adopted, No. 4:21-CV-03780, 2023 WL 2145541 (S.D. Tex. Feb. 21, 2023) (citing 20 C.F.R. § 404.1520c(c)).  "The most important factors in evaluating persuasiveness are supportability and consistency." *Id.* (quoting 20 C.F.R. § 404.1520c(b)(2)).

The Fifth Circuit recently addressed the new standard, holding that an ALJ is required to explain how he considered the supportability and consistency factors for a medical source's medical opinions in his decision.  *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023); *see Brewer v. Kijakazi*, No. 4:22-CV-00238-O-BP, 2023 WL 416421, at *1 (N.D. Tex. Jan. 24, 2023) (citing *Miller* and holding that "beyond these articulation requirements, there is no statutory requirement that the ALJ explain the reasoning behind rejecting certain aspects of a medical opinion's severity findings in its RFC analysis.").  District courts in the Fifth Circuit have held that the current standard for consideration of medical source opinions requires an ALJ to articulate "a discernible logic bridge between the evidence and the ALJ's persuasiveness finding."  *See, e.g., McAdams v. Comm'r of Soc. Sec.*, No. 3:21-CV-00203, 2022 WL 17096166, at *3 (S.D. Tex. Nov. 21, 2022) (citing *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (explaining that the ALJ must provide enough explanation to allow for meaningful review, or "[s]tated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding").

In this case, the ALJ considered Disability Determination Explanations from state agency reviewers Dr. Lawrence Ligon and Dr. Scott Spoor; Physical Assessments from Nunley's treating physicians Dr. Adrian Santamaria, Dr. David Albers, and Dr. Hajin Lim; and the Consultative Examination report of Dr. Farzana Sahi. Tr. 16-18. The Court concludes that the ALJ failed to comply with § 404.1520c as to each.

The ALJ did not articulate the required "discernable logic bridge" between the medical evidence and his persuasiveness findings with respect to the various physician's opinions. For example, Dr. Albers is a surgeon who treated Nunley for recurrent hernias. Dr. Albers's treatment notes state that Nunley presents with a recurrence of his hernia after a repair the prior year, that the hernia was "interfering with his work," and "[g]iven that he has had multiple prior repairs with the same result, he is likely to have recurrence with future repairs." Tr. 299. He assessed Nunley's impairments as enabling him to sit for 8 hours, and lift 10 lbs. occasionally, and that he would miss more than 4 days a month. Tr. 308. Dr. Albers explained the basis for the limitations stating that Nunley "has a recurrent ventral hernia that will get worse with any heavy lifting or straining." Tr. 309. The ALJ found Dr. Albers's opinion unpersuasive, stating "it is inconsistent with the record as a whole." Tr. 17. To support his finding that Dr. Albers's opinion is unpersuasive, the ALJ reasoned that Dr. Albers's opinion was made just weeks after Nunley's onset date and therefore does not incorporate newer medical evidence "which indicates improvement with medical treatment," citing to "Exhibit 6F." Tr. 17. "Exhibit 6F" consists of treatment records from Dr. Santamaria, a physician who treated Nunley for CIPD (chronic inflammatory demyelinating polyneuropathy). Improvement of the conditions for which Dr. Sanatmaria treated Nunley is unrelated to Dr. Albers's treatment of Nunley's recurrent hernias and assessment of Nunley's limitations resulting from the recurrent hernias. To the extent the ALJ was attempting to build a

"logic bridge" between his persuasiveness finding on Dr. Albers's opinion and the medical evidence showing improvement of Nunley's CIPD, the bridge stands on a flawed foundation. In addition, the ALJ states that Dr. Albers's opinion is inconsistent with his own treating notes, reading his treatment notes only to limit Nunley to "no heavy lifting." But the ALJ misreads Dr. Albers's notes which actually state that Nunley will need to take breaks with heavy straining and that his "recurrent ventral hernia will get worse with any heavy lifting or straining." Tr. 308-09. Furthermore, it is also not entirely accurate to say that Dr. Albers did not include a limitation on standing/walking in his assessment. Instead, Dr. Albers simply did not circle any number 0-8 on the stand/walk continuum. *Id.* The ALJ's misinterpretation of Dr. Albers's records is particularly important because the ALJ uses the same misinterpretation as part of his persuasiveness findings with respect to other medical opinions.

The ALJ's remaining explanations for his finding that Dr. Albers's opinion is unpersuasive are generic: "the opinion is inconsistent with the record as a whole[;]" "the evidence received at the hearing level shows the claimant is less limited than determined by the physician as there is no medical justification given for missing 4 or more days a month[.]" Generic references to the record do not allow for meaningful review of the ALJ's persuasiveness finding. *Bjorklund v. Kijakazi*, No. 4:21-CV-01810, 2022 WL 2392315, at *3 (S.D. Tex. July 1, 2022), report and recommendation adopted sub nom. *Bjorklund v. Saul*, No. 4:21-CV-01810, 2022 WL 2905471 (S.D. Tex. July 22, 2022) (generic statements that a medical opinion is inconsistent with the record as a whole does not allow for meaningful review of the ALJ's consideration of the medical opinions.).

The ALJ also failed to adequately explain his persuasiveness finding as to Dr. Lignon's opinion. The ALJ found Dr. Ligon's opinion that Nunley was limited to 4 hours standing/walking

10

in an 8-hour work-day "unpersuasive because it is inconsistent with the record as a whole." Tr. 17. However, the ALJ does not explain why the evidence he cited—the consultative exam showing no muscle weakness or atrophy, normal sensation in extremities, no edema, and negative Homan's sign[3]—is inconsistent with or fails to support Dr. Ligon's standing/walking limitation. In the absence of any explanation of the relevance of these findings to Dr. Lignon's assessment of Nunley's limitations, particularly to a limitation on standing/walking, the ALJ appears simply to have cherrypicked notes from the medical record to bolster his finding. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (holding "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."). Finally, the ALJ found Dr. Ligon's standing/walking limitation inconsistent with Dr. Albers's assessment, again misreading Dr. Albers's assessment to preclude only heavy lifting. Tr. 16-17. The ALJ did not articulate his supportability and consistency findings adequately to allow for meaningful review of his decision that Dr. Ligon's opinion is unpersuasive. *See Torres v. Kijakazi*, No. 2:22-CV-00027, 2022 WL 17728515, at *6 (S.D. Tex. Oct. 26, 2022) (explaining that an adequate explanation of supportability and consistency is one that "enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." (citations omitted)).

While the ALJ found Dr. Ligon's assessment unpersuasive, he found Dr. Spoor's opinion that Nunley could perform light work "persuasive because it is consistent with the record as a whole including the IVIG [intravenous immune globulin] infusions" and because it "is supported

---

[3] "Homan's sign test also called dorsiflexon sign test is a physical examination procedure that is used to test for Deep Vein Thrombosis (DVT)." https://www.physio-pedia.com/Homan%27s_Sign_Test (last visited March 6, 2023).

by the . . . consultative exam as well as the treating physician's limit just to avoid heavy lifting." Tr. 17. The only substantive difference between Dr. Ligon's assessment and Dr. Spoor's assessment is the limitation on standing/walking. The ALJ does not explain why the IVIG infusions eliminate the need for *any* limitation on standing/walking. In addition, the ALJ again relied on his mischaracterization of Dr. Albers's assessment as limiting only Nunley's ability to do heavy lifting.

The ALJ also considered the limitation assessment of treating physician Dr. Santamaria. The ALJ found Dr. Santamaria's opinion that Nunley is "constantly unable to concentrate" and is limited to "no sitting, standing, walking, or lifting" to be unpersuasive "because it is inconsistent with the record as a whole." *Id.* When evaluating the persuasiveness of the opinion, the ALJ stated somewhat flippantly, that "[i]f taken at face value the implication is the claimant would be bedridden and unable to even feed himself." and the evidence shows Nunley less limited than that. *Id.* The only specific evidence cited by the ALJ as inconsistent with Dr. Santamaria's assessment are her treatment notes stating that claimant had a regular heart rate, normal range of motion, soft and nontender abdomen, and motor strength of 5/5. *Id.* The ALJ did not explain why the treatment notes he cited are relevant to an assessment of Nunley's limitations, particularly to a limitation on standing/walking, again leaving the impression that he simply cherrypicked findings.

The ALJ's consideration of Dr. Lim's assessment suffers from similar logical and evidentiary flaws. Dr. Lim opined that Nunley could sit 8 hours, stand/walk 2 hours, needed 15-minute breaks every 45 minutes, could do no lifting, and would be absent 2 days a month. Tr. 311-12. The ALJ found Dr. Lim's assessment unpersuasive "because it is inconsistent with the record as a whole." Tr. 17. The ALJ stated Lim's assessment was contrary to evidence introduced at the hearing; was completed just a month after onset and before IVIG infusions; and was not

12

supported by medical records that show "no major ongoing heart conditions, no joint deformities, and full range of motion and do not support the need for such frequent breaks, no lifting, only 2 hours of stand/walk." Tr. at 18. Again, the ALJ does not explain why "no major ongoing heart conditions, no joint deformities, and full range of motion" are inconsistent with the limitations in Dr. Lim's assessment in light of the medical evidence regarding Nunley's CIPD, hernias, and other impairments. Without some explanation, these references do not allow for meaningful review of the persuasiveness finding or why the limitations described by Dr. Lim are not supported by the record.

Finally, the ALJ was persuaded by the September 29, 2020 assessment of the consultative examiner Dr. Sahi who opined that Nunley can sit for long periods, stand and walk for moderate distances, and do moderate lifting. *Id.* The ALJ recognized that Sahi's assessment provides no specifics but nonetheless concluded "it clearly supports light work and that is consistent with the claimant's treating doctor who opines the claimant is to avoid heavy lifting." Tr. 18. The ALJ completely failed to address the fact that Dr. Sahi's conclusion is inconsistent with findings in the same report that "[t]he patient walks with a cane. He is unable to walk on heels and toes." Tr. 336. Again, the ALJ relies on a mischaracterization of Dr. Albers's assessment.

In sum, the Court concludes that the ALJ committed legal error by not fully articulating the supportability and inconsistency factors when discussing the persuasiveness of the medical source opinions, making it impossible for the Court to review whether his RFC determination is supported by substantial evidence.

### 2. The ALJ erred by not addressing whether Nunley was limited by the medical necessity of a cane.

The ALJ recognized Nunley's testimony that he had "difficulty standing more than ten minutes and use[d] a cane at times." Tr. 15. The repetition of Nunley's testimony is the singular

13

mention of a cane in the entire decision. An assistive device like a cane can impact functional capacity, but ALJ does not need to consider an assistive device in the RFC unless there is evidence establishing that the device is medically necessary. *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 871-72 (S.D. Tex. 2022). In determining medical necessity, the ALJ should consider the particular facts of the case and "[n]either a prescription for a hand-held assistive device, nor a lack thereof, is necessarily dispositive of medical necessity." *Id.* (citation omitted). In addition to the medical source opinions discussed above, the record contains additional evidence regarding Nunley's ability to stand/walk as well as his use of a cane which the ALJ should have considered in making his RFC determination.

Nunley testified that used a cane "off and on" but probably needed to use it more often. ECF 10-4 at 12. The medical records show that Nunley complained in August 2019 that "his coordination has been off" and Dr. Santamaria discussed "falls and safety" with him at a March 10, 2020 appointment. Tr. 314, 319. In June 2020, Nunley reported to Dr. Santamaria that he was "walking with a walking stick." Tr. 328. Another progress note from Dr. Santamaria notes that Nunley had an ataxic, or uncoordinated, gait. Tr. 330.

The September 29, 2020 Consultative Examination Report (which the ALJ found persuasive) states that "[t]he patient walks with a cane. He is unable to walk on heels and toes." Tr. 336. The September 29, 2020 record of Nunley's use of a cane and inability to walk on heels and toes is cited in the agency's Disability Determination Explanations at the initial (Dr. Ligon) and reconsideration (Dr. Spoor) levels. Tr. 54, 58, 73. In addition, Nunley noted his use of a cane in the Function Reports he completed in April 2020 and in December 2020, stating it had been prescribed 15 years ago. Tr. 224, 240.

14

The current record does not contain a prescription for a cane, but Nunley indicated he got a prescription years earlier and both his treating physician and the consultative examiner acknowledged that Nunley used a cane after the date of his alleged onset of disability. The record includes treatment notes, cited above, that describe conditions that justify his need for a cane. Under the circumstances, the Court finds the ALJ erred in not addressing Nunley's need for a cane in his RFC determination.

### 3. Nunley has shown prejudice from the ALJ's errors.

Nunley must also show that the ALJ's errors caused him prejudice. *Miller*, 2023 WL 234773, at *4. In this case, prejudice is clear. Had the ALJ properly considered the medical source opinions and Nunley's use of a cane, it is likely that he would have found Nunley had the RFC for something less than the full range of light work because he would not be able to do a good deal of walking and would not have both hands available for such activities as lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1567(b) (definition of light work); *Duenes*, 578 F. Supp. 3d at 871.

Because the vocational expert testified that Nunley's past work was performed at the light exertion level, if asked about a person of Nunley's age, education, and skill with additional limitations, the vocational expert may have testified that he could not perform his past work. Moreover, the vocational expert testified that Nunley possessed no transferrable skills to sedentary work. Tr. 46. Under the Grid Rules, a person of Nunley's age and education with no transferrable skills that is limited to sedentary work is disabled. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Medical-Vocational Guidelines §§ 201.00(d), 201.02. Therefore, Nunley has met his burden to show that the ALJ's errors in determining his RFC were prejudicial.

### 5. Step Five

The ALJ determines at step five whether the claimant can perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). In this case, the ALJ ended the analysis at step four and made no findings at step five of the sequential analysis, and thus the Court also does not address it.

### IV. Conclusion and Order

For the reasons discussed above, the Court finds that the ALJ committed reversible error in his disability decision. Therefore, Plaintiff's Motion for Summary Judgment (ECF 15) is GRANTED and Defendant's Motion for Summary Judgment (ECF 18) is DENIED. It is ORDERED that this case is REMANDED pursuant to 405(g) for further proceedings. The Court will enter a separate Remand Order.

Signed on March 06, 2023, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge